```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


MINNIE A. TAYLOR,              )
                               )
          Plaintiff            )
                               )
          v.                   )   Case No. 2:02 cv 240
                               )
KATIE HALL, Personally and as  )
Clerk of the City of Gary,     )
Indiana, and THE CITY OF GARY, )
INDIANA,                       )
                               )
          Defendants           )
```

OPINION and ORDER

This matter is before the court on the Motion for Summary Judgment filed by the defendants, the City of Gary and Gary City Clerk in her official capacity, and joined by defendant Katie Hall sued in her individual capacity, on February 6, 2006. For the reasons set forth below, this motion is **GRANTED IN PART,** and the plaintiff's pendent state law claim is **DISMISSED WITHOUT PREJUDICE.**

Background

The following facts are based on the admissible evidence. The plaintiff, Minnie Taylor, interviewed with Computer Supervisor Darrell Drake on July 2, 1999, for a position in the Gary City Clerk's Office. (Taylor Dep. p. 39; Def. Exh. C-1999) In this initial interview, Darrell informed Taylor that her starting salary would be between $25,000 and $30,000. (Taylor Dep. p. 39) Later that month, she had a second interview with Russell Drake, Darrell's brother. (Taylor Dep. p. 40) Both Drakes were in college and worked during the summers and vacations at the

Clerk's Office. (Def. Statement of Facts, ¶¶ 13-14; Maxine Spencer Aff. ¶¶ 7-8). Russell Drake, who was classified as a "Clerk IV" but who the defendants do not dispute became the "acting network administrator" when Darrell went back to school, also told Taylor that her salary would be $25,000 to $30,000. (Taylor Dep. p. 40; Spencer Aff. ¶ 8) He further stated that Taylor would be taking over for himself and Darrell. (Taylor Dep. p. 41) The same day, Taylor interviewed with Junifer Hall. (Taylor Dep. p. 42) Taylor believed that the position she was interviewing for was as a full-time "network administrator." (Taylor Dep. p. 17)

Taylor began work in the Clerk's Office on August 4, 1999. (Taylor Dep. p. 18) She and defendant Katie Hall signed a "Temporary Contract of Employment" for Taylor to serve as the "computer network administrator" for $9.74 per hour through October 4, 1999 or until the City of Gary officially activated her employment status, whichever came first. (Def. Exh. A) The temporary contract is dated August 4, 1999, but Taylor says that she signed it between September 7 and 9, 1999. (Taylor Dep. p. 19) According to Taylor, she signed the contract in order to receive her first paycheck, as she still had not been paid by September 1999. (Taylor Dep. p. 19) At the time of signing, Taylor said that she disputed the amount of money in the contract, but that Katie Hall agreed the amount was wrong and would be changed, and that Junifer Hall told her she needed to sign in order to get "part of [her] money." (Taylor Dep. pp. 19-20).

2

A Personnel Action Request made by Katie Hall dated August 4, 1999, signed on September 23, 1999 by Shirley Walls of the Human Resources Department, and signed but not dated by Taylor, indicates that Taylor's starting salary was $20,266 per year. (Def. Exh. B) By the court's calculations, $9.74 per hour is $6 shy of $20,266 per year. Approximately one year later, on October 18, 2000, Katie Hall requested that Taylor be placed on the payroll as a Clerk VII at $22,698 a year. (Def. Exh. D)

In the course of her work at the Clerk's Office, Taylor was responsible for the proper functioning and operation of the computers in the criminal division of the Clerk's Office. (Maxine Spencer Aff. ¶ 5) She handled computer break-downs and glitches, unless they were so major as to require the assistance of an outside vendor. (Spencer Aff. ¶¶ 5-6) She also was responsible for daily back-ups of all computer files, downloading, and upkeep of the police computer. (Edith Willis Aff. p. 1) On at least one occasion, Katie Hall directed a potential database vendor to the "network administrator," Taylor, for further questions on a computer program Hall sought to be built for the Clerk's Office. (Pl. Exh. 2)

When Taylor received her first paycheck on September 9 or 10, 1999, she told Katie and Junifer Hall, as well as criminal division supervisor Maxine Spencer, that the amount was incorrect. (Taylor Dep. p. 21) According to Taylor, during the following six to eight months, the Halls and Spencer continued to represent that Taylor's pay would be corrected. (Taylor Dep. p.

3

24) Around January 2000, Taylor says that she received a $300 increase in pay. (Taylor Dep. pp. 24, 33) She complained again to Spencer and payroll specialist Margie Davis, but Davis told her, "This is your salary now," and recommended that she contact Junifer. (Taylor Dep. p. 29) In Taylor's conversation with Junifer, Taylor was told that the Halls were working on getting $25,000 per year for all computer workers in the office. (Taylor Dep. pp. 31-32) According to Taylor, she subsequently received three or four more increases, including an increase of $1800 at some point around January 2001, followed by an annual 2% increase in 2002. (Taylor Dep. p. 33) Other than the 2% increase, Taylor denies that these increases were standard annual increases. (Taylor Dep. p. 33)

Taylor also claims that she was not insured for her first year of employment because Katie Hall did not sign her "PA" making Taylor an official employee until November 1999. (Taylor Dep. p. 35) Because the open enrollment for 2000 had ended by the time the PA was signed, Taylor did not have insurance. (Taylor Dep. p. 36) She had approximately $1,000 in medical expenses before she was given insurance. (Complaint, p. 2)

Taylor further contributed $2,500 to Katie Hall's political fundraisers. (Taylor Dep. p. 55) She contributed to every fund-raiser except one which occurred four days after she was hired. (Taylor Dep. p. 45) According to Taylor, she was expected to contribute. (Taylor Dep. pp. 54, 56) She was told "[T]his is a political job. We could either pay the money, go out and stand

on the corner and make the money, or cough up the money." (Taylor Dep. p. 54)  However, when she explained that she was not getting paid and did not have money to contribute to the first fundraiser, she did not have to contribute. (Taylor Dep. p. 45) She contributed to every other fundraiser. (Taylor Dep. p. 45) She filed a petition with the FBI for the return of $1,500 of these contributions during the criminal case against Katie and Junifer Hall, and she ultimately received $1,700 back.  (Taylor Dep. p. 97)

Taylor continued to be employed by the Clerk's Office, and to receive scheduled raises, through at least 2004. (Def. Stat. Facts, ¶ 19; Def. Exh. C)

On June 7, 2002, Taylor filed suit against the City of Gary, the Gary City Clerk in her official capacity, and Katie Hall in her individual capacity, for breach of an express contract of employment, quantum meruit, conversion, intentional infliction of emotional distress, and violation of her free speech rights.  In responding to the defendants' motion for summary judgment, Taylor expressly has declined to pursue her tort claims.  (Response MSJ, p. 13) Accordingly, the only claims remaining are her First Amendment/civil rights and breach of contract claims.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." ***See Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548

5

(1986); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004); *Windle v. City of Marion, Indiana*, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence*, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, ___F.3d ___, 2005 WL 2271911, at *PAGE (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994). *See also Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black*

*Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also*, *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); *Celotex Corp*., 477 U.S. at 322-323, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc*., 327 F.3d 569, 573 (7th Cir. 2003)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

7

The defendants seek summary judgment on Count V, in which Taylor alleges a violation of her civil rights, under three fact patterns that could invoke a civil rights claim: (1) forced participation in Katie Hall's fundraisers; (2) alleged harassment for participation in the federal investigation leading to Katie and Junifer Halls' indictments; and (3) loss of property interest without due process of law when part of Taylor's salary allegedly was diverted to Darrell and Russell Drake.  The only claim that Taylor defends in response to the defendants' motion is her forced participation in the fundraisers. Therefore, insofar as Taylor alleges she is entitled to relief on the other two claims, summary judgment is appropriate pursuant to Federal Rule of Civil Procedure 56(e).

The 42 U.S.C. §1983 violation Taylor alleges in her complaint is a violation of her freedom of speech. Taylor's response to the summary judgment, which cites no law in support of her civil rights claim, does not clarify the nature of her claim. She generally states that the fact that Katie Hall was indicted in the criminal case is enough to establish her civil case and sounds as a freedom of association claim. First, only the mail fraud to which Katie Hall pled guilty may be considered in this case; the indictment may not be considered.  A guilty plea for mail fraud has no relevance to this case.  Second, the court need not expend limited judicial resources in researching, refining, and otherwise fleshing out arguments the parties themselves do not adequately support. See ***Tyler v. Runyon***, 70 F.3d 458, 464-65

8

(7th Cir. 1995); *Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984). However, for the sake of thoroughness, the court briefly will consider Taylor's fundraising contribution claim under both a freedom of speech and freedom of association analysis.

As the Supreme Court recently noted, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, No. 04-473, 2006 WL 1458026, at *5 (May 30, 2006). In order to determine whether a public employee has a colorable claim for a violation of her free speech rights, the court first must decide "whether the employee spoke as a citizen on a matter of public concern." *Garcetti*, 2006 WL 1458026, at *5. The question of "[w]hether a statement rises to the level of public concern is a question of law." *Miller v. Jones*, 444 F.3d 929, 935 (7th Cir. 2006).

To be a matter of public concern, the issue on which the plaintiff speaks must be "something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83-84, 125 S.Ct. 521, 526, 160 L.Ed.2d 410 (2004). *See also Connick v. Myers*, 461 U.S. 131, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) (noting that speech is protected if it relates "to any matter of political, social, or other concern to the community"). In evaluating the plaintiff's speech, the court looks "to the content, form, and context

9

of the statement," with content being the most important factor. *Miller*, 444 F.3d at 935. At this first step, if the plaintiff has spoken "instead as an employee upon matters only of personal interest," she has no First Amendment protection. *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690.

If the court determines that the plaintiff has spoken as a citizen on a matter of public concern, the court next considers "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 2006 WL 1458026 at *5. At this stage, some action by the defendant municipality is necessary. *See* *Mosely v. Board of Education of the City of Chicago*, 434 F.3d 527, 533-34 (7th Cir. 2006); *Ashman v. Barrows*, 438 F.3d 781, 784 (7th Cir. 2006). *See also* *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691 (noting that the speech must have contributed to the employer's adverse action). While the employer's conduct under §1983 need not rise to the level of "adverse employment action within the meaning of the antidiscrimination statutes, such as Title VII of the Civil Rights Act of 1964," the facts still must show "some deprivation under color of law that is likely to deter the exercise of free speech." *Mosely*, 434 F.3d at 533-34 (internal quotations and citations omitted). Finally, "while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." *Garcetti*, 2006 WL 1458026 at *7.

Here, Taylor spoke out on two subjects: 1) that she was not being paid what she thought her salary would be; and 2) that the Drakes were being paid, but not working.[1] (Taylor Dep. p. 80) Taylor's complaints about her pay are nothing more than an employee complaining about a matter only of personal interest. *See Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. As such, she has no First Amendment protection for these statements. The second category of statements regarding the Drakes presents a closer question. "Ghost employment" is a crime in Indiana. *See* Ind. Code §35-44-2-4(c). Taylor's complaints regarding the Drakes could be construed as an attempt to "bring to light actual or potential wrongdoing or breach of the public trust," which would be a matter of public concern. *Miller*, 444 F.3d at 935 (*quoting Connick*, 461 at 148, 103 S.Ct. at 1691). However, Taylor's deposition indicates that these complaints were generally made in the context of Taylor's attempt to get a higher salary for herself. (Taylor Dep. pp. 80-81) Regardless, the undisputed facts show that the defendants did not respond to Taylor's complaints in any manner that could be construed as depriving Taylor of her First Amendment right to free speech. *Mosely*, 434 F.3d at 533-34. Therefore, Taylor's §1983 free speech claim fails.

To the extent Taylor also asserts a violation of her freedom of association, her §1983 claim fails as well. Although the Cir-

---

[1] The court notes that the only "speech" on record pertaining to the fundraisers was Taylor's statement that she could not contribute to the first fundraiser Katie Hall held after Taylor was hired. No action was taken in response to this statement.

cuits are split on the issue, the Seventh Circuit follows the line of decisions which applies the balancing test set forth above when evaluating free association claims. *See, e.g.,* ***Montgomery v. Stefaniak***, 410 F.3d 933, 937 (7th Cir. 2005); ***Balton v. City of Milwaukee***, 133 F.3d 1036, 1040 (7th Cir. 1998). As with free speech, a plaintiff claiming a violation of her freedom to associate - or not to associate, as the case is here - must show some "deterrent, or 'chilling,' effect" on the plaintiff's speech caused by the municipality's actions. ***Laird v. Tatum***, 508 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972). Mere knowledge of governmental activity, combined with fear that the government may use the knowledge to harm the plaintiff, is not enough. *See* ***Laird***, 508 U.S. at 11, 92 S.Ct. at 2324. Conversely, every case within the Seventh Circuit in which a public employee has alleged a violation of the right to associate freely has involved some form of detrimental action taken by the employer. *See, e.g.,* ***Hudson v. Chicago Teachers Union Local No. 1***, 743 F.2d 1187, 1192-93 (7th Cir. 1984) (use of union dues); ***Kelly v. Municipal Court of Marion County***, 852 F.Supp. 724, 729 (S.D. Ind. 1994), *aff'd*, 97 F.3d 902 (7th Cir. 1996) (termination); ***Lowenstein v. Wolff***, No. 93 C 5067, 1994 WL 411389, at *1 (N.D. Ill. Aug. 3, 1994) (termination). *See also* ***Rutan v. Republican Party of Illinois***, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)(considering "failure to promote, failure to transfer, and failure to recall after layoff").

The facts of this case fall somewhere between these two guideposts. Some cases contain language which suggests that an employee who is compelled to participate in a political agenda for fear of retribution has a claim under the First Amendment. *See* **Rutan**, 497 U.S. at 73, 110 S.Ct. at 2736 ("Employees who find themselves in dead-end positions due to their political backgrounds *are* adversely affected. They will feel a significant obligation to support political positions held by their superiors, and to refrain from acting on the political views they actually hold, in order to progress up the career ladder."); **Hudson**, 743 F.2d at 1193 (finding that the freedom of association "is infringed by making someone contribute money to an association engaged in political or ideological activities"). However, the facts of both **Rutan** and **Hudson** still involved some form of retribution by the employer when the employee failed to fulfill his obligations.

Here, it is beyond question that political party contributions are a matter of public concern. However, the nexus between Taylor's associational activity (contributing) and employer action is less clear. The undisputed evidence is that Taylor felt compelled to contribute to Katie Hall's campaigns, that she did in fact contribute between $1,500 and $2,500, and that she was told "[T]his is a political job. We could either pay the money, go out and stand on the corner and make the money, or cough up the money." (Taylor Dep. p. 54) Under the language of **Rutan** and **Hudson**, these facts could raise a colorable claim that Taylor's

13

continued employment was contingent upon contributing to Katie Hall.

Although Taylor testified that she was not suspended and did not receive a reduction in pay for failing to contribute, this testimony is hardly relevant in light of the fact that Taylor contributed to every single campaign Hall conducted except one. (Taylor Dep. p. 54) However, Taylor suffered no detrimental action on the single occasion that she did not contribute to a campaign. (Taylor Dep. p. 45) The lack of retribution presents a close question as to whether Taylor's job truly was conditioned on her contributions. See *Lowenstein*, 1994 WL 4113889, at *5-6. Nevertheless, taking the facts and inferences in the light most favorable to the plaintiff, the lack of retribution on this one occasion may be explained by the fact that Taylor had worked for only four days and had not received a paycheck at the time of the first campaign. (Taylor Dep. p. 45) Consequently, the court is precluded from entering summary judgment on the grounds that Taylor did not establish her *prima facie* case for a free association claim.

However, Taylor has failed to provide any evidence that her contributions fell within the two-year statute of limitations for a §1983 claim. In her summary judgment response brief, she concedes that she "could not recover from any violations prior to the two years running of the statute of limitations," but she has not produced any evidence of the dates on which she contributed to Katie Hall's campaigns, and the record does not even indicate

the date on which Katie Hall ceased to be the City Clerk. (Response MSJ, pg. 14) The sum total of Taylor's response to the defendants' statute of limitations argument is two sentences, one containing the above concession and the other a statement that "this was a continuing violation," without discussion or legal support. (Response MSJ, pg. 14) Notwithstanding the incongruity between the concept of a continuing violation and the admission that Taylor could not recover for contributions made outside the two year period, the continuing violation doctrine simply does not apply to Taylor's claim. *See, e.g.,* ***Dasgupta v. University of Wisconsin Board of Regents***, 121 F.3d 1138, 1139 (7th Cir. 1997) ("A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period."). Because Taylor "may not rest upon the mere allegations or denials" in her pleadings but "by affidavits or otherwise . . . set forth specific facts showing there is a genuine issue for trial," summary judgment must be granted on Taylor's free association claim. *See* Rule 56(e).

The only remaining claim is Taylor's pendent state law claim for breach of contract. Because this claim is based on facts and legal theories distinct from those relevant to the federal claims, the contract claim appropriately is dismissed without prejudice. *See* 28 U.S.C. §1367(c)(3). *See also* ***O'Grady v. Village of Libertyville***, 304 F.3d 719, 725 (7th Cir. 2001)(noting that

the dismissal of pendent claims is reviewed under the abuse of discretion standard).

_____

For the foregoing reasons, the Motion for Summary Judgment filed by the defendants, the City of Gary and Gary City Clerk in her official capacity, and joined by defendant Katie Hall sued in her individual capacity, on February 6, 2006, is **GRANTED IN PART**. Summary judgment is granted on all claims except the plaintiff's pendent state law claim for breach of contract, which is **DISMISSED WITHOUT PREJUDICE**.

ENTERED this 28th day of June, 2006

                                      s/ ANDREW P. RODOVICH
                                          United States Magistrate Judge